1
2
3
4
5
6

ROBINS, KAPLAN LLP
Roman Silberfeld, Bar No. 62783
RSilberfeld@RobinsKaplan.com
Tommy H. Du (CA Bar No. 305117)
TDu@robinskaplan.com
2121 Avenue of the Stars, Suite 2800
Los Angeles, CA 90067-5052
(310) 552-0130

*Attorneys for UnitedHealthcare of Texas, Inc. and
United Healthcare Services, Inc.*

7
8
9

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16

| UNITEDHEALTHCARE OF TEXAS, INC. AND UNITED HEALTHCARE SERVICES, INC. | Case No. |
|---|---|
| Plaintiffs, | **COMPLAINT** |
| v. | |
| RADIOLOGY PARTNERS, INC. | |
| Defendant. | |

17
18
19
20
21
22
23
24
25
26
27
28

Plaintiffs UnitedHealthcare of Texas, Inc., and United HealthCare Services, Inc. (collectively, "United") hereby state and allege as follows:

**INTRODUCTION**

1.      Radiology Partners, Inc. ("Radiology Partners") is a rapidly growing physician-staffing company backed by billion-dollar private equity firms. In its unscrupulous pursuit of profits Radiology Partners orchestrated a pass-through billing scheme intended to defraud United, its customers, and its members of tens of millions of dollars. In addition to being unlawful, Radiology Partners' scheme unfairly drives up the cost of healthcare for patients and payors alike.

2.      Since Radiology Partners was founded by former DaVita

COMPLAINT

ROBINS KAPLAN LLP

ROBINS KAPLAN LLP

executives in 2012, it has acquired control over the practices of 3,300 radiologists across 35 different states.

3.     Since as early as 2014, Radiology Partners has engaged in a classic form of healthcare fraud called pass-through billing. Simply put, Radiology Partners, caused its affiliated medical groups to bill for services that they did not perform.

4.     Acting in concert with its affiliated medical groups, Radiology Partners deliberately caused thousands of claims to be improperly billed to United under network contracts, even though the in-network provider did not perform the underlying services being billed.

5.     For example, one of Radiology Partners' affiliated radiology groups, Singleton Associates P.A. ("Singleton"), was a small radiology practice located in Houston, Texas that was contracted to practice at two local hospitals.

6.     Singleton obtained particularly high reimbursement rates from United under a contract executed in 1998 (the "Agreement"). The Agreement made clear that Singleton was only entitled to reimbursement for services performed by its "Medical Group Physicians" who were "shareholders, partners or employees" of Singleton, prohibited Singleton from assigning its rights and responsibilities under the contract without written consent from United, and required Singleton to notify United of any changes in ownership or control.

7.     For years, Singleton submitted claims for reimbursement under the Agreement without issue for services performed by its Medical Group Physicians located in the Houston area.

8.     That changed in 2014 when Singleton was effectively acquired by Radiology Partners. Once Singleton was controlled by Radiology Partners, Radiology Partners caused Singleton to breach the Agreement by

submitting claims for services performed by providers who were not shareholders, partners, or employees of Singleton (the "Unauthorized Providers") and who were not performing services at hospitals where Singleton was contracted. Likewise, Radiology Partners caused Singleton to fraudulently bill United for services performed on individuals who were not Singleton's patients.

9.    Radiology Partners directed and conspired with Singleton to engage in a fraudulent pass-through billing scheme to deceive United by submitting claims for services performed by Unauthorized Providers, many of whom were located outside of Houston, and in some cases, even outside of Texas. The sole purpose of the pass-through billing was to maximize Radiology Partners' profits for services performed by their affiliated medical groups.

10.    The scheme grew over time. In 2013, before Radiology Partners took over Singleton, 70 unique providers performed services that were billed under the Agreement. That number increased to more than 150 unique providers in 2017; nearly 315 unique providers in 2018; more than 500 unique providers in 2019; and to more than *1,000* unique providers in 2022. Upon information and belief, most of the providers billing under Singleton's contract since at least 2017 were practicing with medical groups *other than* Singleton.

11.    Radiology Partners' interference with Singleton's contracts with United and its conspiracy to defraud United has resulted in United paying tens of millions of dollars in reimbursements to which Radiology Partners and Singleton were not entitled.

12.    All of this was done so that Radiology Partners' private equity investors could reap extraordinary profits.

COMPLAINT

ROBINS KAPLAN LLP

13.     United brings this action to recoup the amounts Radiology Partners unlawfully obtained from the United Plaintiffs and their plan sponsors.

## PARTIES

14.     Plaintiff UnitedHealthcare of Texas, Inc. is a corporation organized under the laws of Texas with a principal place of business in Texas.

15.     Plaintiff United HealthCare Services, Inc. is a corporation organized under the laws of the State of Minnesota, with its principal place of business in the State of Minnesota.

16.     Defendant Radiology Partners, Inc. is a Delaware Corporation with a principal place of business in the State of California.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because there is complete diversity between United and Radiology Partners and the amount in controversy exceeds $75,000.

18.     This Court also has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because it arises under the Constitution, laws, or treaties of the United States. Specifically, United asserts claims arising under the Federal Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961 *et seq.* and under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.* The Court likewise has subject matter jurisdiction over United's state and common-law claims, as those claims are so related to the federal claims that they form part of the same case or controversy. 28 U.S.C. § 1367.

19.     This Court has general and specific personal jurisdiction over Radiology Partners in this action because Radiology Partners' principal place of business is in the State of California, it systematically and

COMPLAINT

ROBINS KAPLAN LLP

continuously conducts business in California, and many of the activities giving rise to this action took place in and/or were directed by Radiology Partners from California.

20.     Venue is proper in this district under 28 U.S.C. § 1391 because Radiology Partners resides in this district and a substantial part of the events giving rise to the claims in this action have occurred in this district. Specifically, from within this District, Radiology Partners devised and directed its unlawful pass-through billing scheme to cause Singleton to submit fraudulent claims for reimbursement for radiology services.

## **FACTUAL BACKGROUND**

## **I.    THE IMPACTED HEALTH BENEFIT PLANS**

21.     United is authorized to bring this action to recover overpayments caused by Radiology Partners' illegal and tortious conduct on behalf of United's fully insured and self-funded health plans.

22.     United brings this action on its own behalf as the provider of fully-insured health plans through which individuals, employees, and employers pay United premiums in exchange for United agreeing to pay covered healthcare claims using United's money. A portion of the claims at issue in this case are fully insured claims. Thus, United was induced to pay its own funds as part of the fraudulent pass-through billing scheme between Radiology Partners and its affiliated practice groups.

23.     United also brings this action as the claims administrator for self-funded, employer-established health plans. Those plans retain United as a third-party administrator to process employees' and their families' healthcare claims and pay those claims out of a pool of money comprised of funds contributed by employers and their employees. For these self-funded plans, United does not underwrite or insure the benefits being paid. Rather, claims covered under self-funded health plans are paid directly by

employers and employees using their own money. These are known as "administrative services only" or "ASO" plans. Accordingly, Radiology Partners profited as part of the improper billing scheme at the expense of the employers and employees, who fund these ASO health plans.

24.     United provides claim administration services for the self-funded plans pursuant to Administrative Services Agreements ("ASAs"), which identify the rights and obligations of United and the plan sponsors.

25.     The ASAs for the ASO plans at issue in this litigation confer on United the responsibility and discretion to administer claims under the plans.

26.     Among other things, the ASAs give United the exclusive discretion and authority to monitor and pursue overpayments of plans funds. The ASAs state that the customers delegate to United the authority (but not the obligation) to recover overpayments resulting from fraud, waste, or abuse through litigation on behalf of the ASO plans.

27.     United's ASAs typically state:

> Customer delegates to United the discretion and authority to develop and use standards and procedures for any recovery opportunity, including but not limited to whether or not to seek recovery, what steps to take if United decides to seek recovery, whether to initiate litigation or arbitration, the scope of such litigation or arbitration, which legal theories to pursue in such litigation or arbitration, and all decisions relating to such litigation or arbitration, including but not limited to, whether to compromise or settle any litigation or arbitration, and the circumstances under which a claim may be compromised or settled for less than the full

COMPLAINT

ROBINS KAPLAN LLP

amount of the potential recovery. In all instances where United pursues recovery through litigation or arbitration, Customer, on behalf of itself and on behalf of its Plans, will be deemed to have granted United an assignment of all ownership, title, and legal rights and interests in and to any and all claims that are the subject matter of the litigation or arbitration.

28. The ERISA plans at issue in this litigation include this or substantially similar language. Beyond the authority entrusted to United under their ASAs with plan sponsors, United has a concrete business interest in paying only valid claims under the ASO plans it administers.

## II. UNITED USES NETWORK AGREEMENTS TO MANAGE HEALTHCARE COSTS

29. United offers a broad range of integrated health care and related plans and services to its plan sponsors and member employees.

30. United's network of contracted medical care providers is a key component of United's efforts to ensure that healthcare benefits are affordable to its plan sponsors and member employees.

31. Through contracts with physicians and medical facilities, United can establish predictable rates of payment for medical care.

32. Health benefit plans encourage members to use in-network providers, an arrangement beneficial to both the provider, who enjoys certainty of payment, and the member, who receives appropriate healthcare services at a discounted cost.

33. When a United member receives in-network healthcare, the United member is responsible for the payment of a co-pay, deductible and/or co-insurance. Whether a member must pay more out of pocket can be impacted by the amounts allowed for a claim by United.

34. This participating provider network structure provides predictable costs to United, its plan sponsors, and their member employees to help keep their healthcare affordable.

## III.   RADIOLOGY PARTNERS' BLIND PURSUIT OF PROFIT

35. Radiology Partners is a physician-staffing company that affiliates with medical groups that provide radiology services at hospitals and other facilities. Formed in 2012, Radiology Partners describes itself as the "largest radiology practice" in the country. It operates in 35 states and at 3,000 sites, working with roughly 3,300 radiologists. At least two separate billion-dollar private equity firms, Starr Investment Holdings and New Enterprise Associates, have reportedly invested hundreds of millions of dollars in Radiology Partners since its creation.

36. Supported by these private equity firms, Radiology Partners has achieved its tremendous size and market position by seeking out and acquiring control of medical groups at a rapid pace.

37. While claiming that medical groups are "Locally Led," Radiology Partners carries out its operations through a web of subsidiaries and affiliates under the umbrella "RadPartners."

38. In some cases, medical groups are organized as professional associations. When Radiology Partners takes over, these professional associations become owned by physicians who are executives at Radiology Partners, thus giving Radiology Partners effective control over the medical group.

39. Radiology Partners controls various functions of these professional associations, including payor contracting and billing.

40. In exchange for these services, Radiology Partners siphons off large amounts of revenue from the medical groups. Indeed, on information and belief, the affiliated medical groups no longer retain any profits

1  resulting from the radiology services that they provide, and all profits are

2  instead kept by Radiology Partners.

3      41.   The dual desires to maximize revenue and profits to meet its

4  private equity investors' goals, and to fund its rapid growth, have caused

5  Radiology Partners to engage in the fraudulent practices at issue here in its

6  dealings with insurers and claims administrators.

7  **IV.   RADIOLOGY PARTNERS' PASS-THROUGH BILLING SCHEME**

8      42.   This lawsuit concerns Radiology Partners' single-minded

9  pursuit of profit obtained by causing its medical groups to violate the plain

10  terms of their contracts with United.

11      43.   As discussed in further detail below, Radiology Partners caused

12  Singleton to bill United for services that Singleton did not perform in order

13  to give Radiology Partners' other affiliated medical groups access to the

14  high reimbursement rates provided in United's nearly 25-year-old contract

15  with Singleton.

16          **a.  United's 1998 Network Contract with Singleton**

17      44.   Singleton and United entered into a Medical Group

18  Participation Agreement effective January 1, 1998 (the "Agreement").

19      45.   At the time, Singleton was a radiology group made up of

20  individual radiologists or "Medical Group Physicians" that provided

21  services in Houston at two facilities: St. Luke's Episcopal Hospital and

22  Texas Children's Hospital.

23      46.   Under the Agreement, United agreed to reimburse Singleton at

24  a high rate of reimbursement totaling the "lesser of (1) Medical Group's

25  Customary Charge, less any applicable Member Expenses, or (2) 80% of

26  Medical Group's 1997 fee schedule as per the attached Payment Exhibit for

27  such Health Services, less any applicable Member Expenses."

28

COMPLAINT

47.   Under this Agreement, Singleton was paid reimbursements equaling nearly 600% of what Medicare will pay for the same services. Stated another way, under the Agreement, United paid Singleton six times what Medicare would reimburse for the exact same services.

48.   To ensure that Singleton was the *only* beneficiary of the high-reimbursement rates found in the Agreement, the parties included various provisions that set out which services were entitled to reimbursement under the terms of the contract.

49.   The Agreement explicitly applies and provides for reimbursement only for services provided by a "Medical Group Physician," a term defined as M.D.'s or D.O.'s who "practice[] as a shareholder, partner or employee of [Singleton] and who has executed a Medical Group Physician Participation Addendum. "

50.   The Agreement also states that Singleton "may assign any of its rights and responsibilities under the Agreement to any person or entity only upon the prior written consent" of United.

51.   The Agreement also required that Singleton provide notice of any change in its name, ownership, or TIN.

52.   The Agreement further stated that "[n]either party shall disclose to third parties any confidential or proprietary business information which it receives from the other party, including, but not limited to . . . specific rates. . . ."

COMPLAINT

ROBINS KAPLAN LLP

**b. Radiology Partners' Affiliation with Singleton**

53.     Recognizing the opportunity to exploit the healthcare system, Radiology Partners invested heavily to acquire this hospital-based physician practice groups.[1]

54.     Funded by billion-dollar private equity firms, Radiology Partners is no stranger to this world of profiteering.

55.     Before Radiology Partners became affiliated with Singleton, public filings show Singleton was a small radiology practice with approximately 30 radiologists who provided radiology services in and around Houston. Public filings also show that Singleton had officers, partners, and shareholders who were physicians that practiced as part of the Singleton medical group. That all changed after Singleton became affiliated with Radiology Partners.

56.     In the fall of 2014, Singleton became affiliated with Radiology Partners. At the time the affiliation was announced in 2014, Singleton was described as having around "30 fellowship-trained, board-certified

---

[1] This phenomenon has led to state and federal legislation to combat the problem. *See* Surprise Medical Bills Cost Americans Millions. Congress Finally Banned Most of Them., The New York Times, December 22, 2020 (https://www.nytimes.com/2020/12/20/upshot/surprise-medical-bills-congress-ban.html); Surprise Billing Protections: Help Finally Arrives For Millions Of Americans, The Commonwealth Fund, December 17, 2020, https://www.commonwealthfund.org/blog/2020/surprise-billing-protections-cusp-becoming-law; Private Equity Is The Driving Force Behind Surprise Medical Billing, Americans for Financial Reform, March 30, 2020, https://ourfinancialsecurity.org/2020/03/fact-sheet-private-equity-driving-force-behind-surprise-medical-billing/; Investors' Deep-Pocket Push To Defend Surprise Medical Bills, Kaiser Health News, https://khn.org/news/investors-deep-pocket-push-to-defend-surprise-medical-bills/. This legislation has been opposed by the private investment firms using sham lobbying entities to hide their identities. *See* Mystery Solved: Private-Equity Backed Firms Are Behind Ad Blitz On 'Surprise Billing', The New York Times, September 16, 2019, https://www.nytimes.com/2019/09/13/upshot/surprise-billing-laws-ad-spending-doctor-patient-unity.html.

COMPLAINT

radiologists serving six hospitals and over 20 total healthcare facilities throughout Houston, Texas and the surrounding metro area."[2]

57.     On October 31, 2014, Singleton filed an Amended and Restated Certificate of Formation that changed Singleton's ownership and made Anthony Gabriel the only member, officer, or director of Singleton. In addition to becoming the sole member, Gabriel became the sole officer and director of Singleton.

58.     No notice was ever provided to United of any change in Singleton's ownership.

59.     Anthony Gabriel is a co-founder of Radiology Partners and its Chief Operating Officer.

60.     By appointing Gabriel as the sole member and director of Singleton, Radiology Partners can exercise control over all actions taken by Singleton without formally owning it. Radiology Partners and Singleton structured their relationship to remain two separate entities.

### c.   **Radiology Partners and Singleton's Scheme to Defraud United**

61.     Shortly after Radiology Partners and Singleton commenced their relationship, Radiology Partners caused Singleton to begin adding Unauthorized Providers, in breach of the Agreement. Those providers had no affiliation with Singleton but, instead, were affiliated with other medical groups that were controlled by Radiology Partners.

62.     While the Agreement contemplated that providers could be added to the Singleton medical group subject to the other terms of those Agreement, only providers who were actually working for Singleton—and

[2] https://www.businesswire.com/news/home/20141110005131/en/Radiology-Partners-Expands-Radiology-Group-Practice-Through-Affiliation-with-Singleton-Associates;
https://www.providenthp.com/expertise/singleton-associates/

COMPLAINT

providing services to Singleton patients—could be added to and have their services billed under that contract.

63.    United has since learned that the vast majority of providers that Singleton, acting in concert with Radiology Partners, added to the Agreement were Unauthorized Providers. They were not employees, shareholders, or partners of Singleton and were not providing services to Singleton's patients (*i.e.*, at hospitals where Singleton was previously contracted to provide radiology services).

64.    Indeed, many of the radiologists added to the Agreement starting in 2015 were employed by medical groups other than Singleton. Many of these groups had separate arrangements with Radiology Partners. And many of these other medical groups, that actually employed the providers Singleton was adding, had separate network contracts with United.

65.    On information and belief, the sole reason for this contract manipulation is for Radiology Partners to increase profits by having its other affiliated medical groups reimbursed by United at Singleton's uniquely lucrative rates.

66.    As a result, starting in 2015, Radiology Partners caused Singleton to add hundreds of providers to the Agreement so those providers services could be billed and reimbursed through that contract.

67.    United has now discovered a consistent pattern: When Radiology Partners became affiliated with a new medical group, it would have the providers working for that new medical group added to the Agreement despite the fact that they were Unauthorized Providers.

68.    Radiology Partners and Singleton accomplished this by conspiring to have an individual—representing themselves as acting on behalf of Singleton—make requests to United's operations team to link the

ROBINS KAPLAN LLP

"newly added providers" to the Singleton Tax Identification Number ("TIN") in United's systems.

69.   When Singleton and/or Radiology Partners made these requests, they represented to United that the providers were Singleton providers as defined under the terms of the Agreement.

70.   Relying on those representations, United then linked the new providers to Singleton's TIN, which allowed the new providers' claims to be reimbursed under the terms of Singleton's network agreement.

71.   After linking those providers to Singleton's TIN, Singleton, at the direction of Radiology Partners, would then bill for services performed by those providers under the Agreement, despite the fact that Singleton was not entitled to reimbursement for services performed by Unauthorized Providers.

72.   As a result of Radiology Partners and Singleton's scheme to have Singleton bill for services that were not payable under the terms of the Agreement with United, Radiology Partners and Singleton received tens of millions of dollars in reimbursements to which they were not entitled.

73.   United has compared the professional identities of a sample of providers whose services were billed through the Agreement since 2014 with publicly available information about those providers and who they work for. The overwhelming majority of these providers were affiliated with Radiology Partners, but not with Singleton. Many are not local to Houston—which is where Singleton provides services—and some even reside outside the state of Texas.

74.   The following are examples of Unauthorized Providers that Radiology Partners and Singleton caused to be improperly linked to the Singleton TIN and whose services Singleton, at the direction of Radiology Partners, fraudulently billed under the terms of the Agreement.

75.     In 2015 United received claims for services performed by Matthew Clower, M.D., billed under the Singleton TIN and the terms of the Agreement. Dr. Clower's LinkedIn states that he was a radiologist for Radiology Partners from July 2015 to September 2019.[3] Prior to that, he worked for a radiology provider in Kentucky. During Dr. Clower's tenure at Radiology Partners, he was never listed as a provider on Singleton's website and his LinkedIn profile does not reflect that he ever worked for Singleton.[4]

76.     Also in 2015, United began receiving claims for services performed by Nina Kottler, M.D., and billed by Singleton under the terms of the Agreement. Dr. Kottler describes herself as "the first radiologist to join Radiology Partners,"[5] which occurred when she assumed an executive role in April 2013. She is now the Associate Chief Medical Officer of Clinical Artificial Intelligence and Vice President of Clinical Operations at Radiology Partners.[6] In 2015, Dr. Kottler practiced at Eagle Imaging,[7] an Oklahoma-based provider that Radiology Partners partnered with in early 2013.[8] Dr. Kottler was part of Eagle Imaging's "Matrix" group, which provided "after hours" remote radiology services. Her status as a remote provider is consistent with her LinkedIn profile, which states she worked out of Huntington Beach, California. In 2015, Dr. Kottler was not a listed Singleton provider on Singleton's website.[9]

---

[3] https://www.linkedin.com/in/matthew-clower-m-d-651b9227/
[4] *See, e.g.*,
https://web.archive.org/web/20160114103810/http://www.saparadiology.com/AdultServices/MeetOurPhysicians.aspx
[5] https://www.linkedin.com/in/radkottler/
[6] https://www.radpartners.com/about-us/our-team/
[7] https://web.archive.org/web/20160216090333/http://eagleimagingok.com/team/
[8] https://www.radpartners.com/2021/03/physician-spotlight-dr-byron-christie/
[9] https://web.archive.org/web/20150320225320/http://www.saparadiology.com:80/AdultServices/MeetOurPhysicians.aspx

COMPLAINT

ROBINS KAPLAN LLP

77.     Eagle Imaging—now "RP Eagle"—was Radiology Partners' first practice group and figures prominently in Radiology Partners' business. Many of Eagle Imaging's physicians have gone on to be executives at Radiology Partners. Dr. Kottler, above, is an example, as is Byron Christie, M.D., Radiology Partners' Associate Chief Medical Officer of Integration.

78.     While Eagle Imaging had clinics in Texas in 2016, they were clustered around the Dallas-Fort Worth metropolitan area—250 miles from Houston. Nevertheless, in 2016 the services of at least ten Eagle Imaging providers were billed through the Agreement:[10]

| Physician Name | Physician NPI | Employer in 2016[11] |
|---|---|---|
| Alexander, John E. | 1194785022 | Eagle Imaging / RP Eagle |
| Christie, Byron | 1760434955 | Eagle Imaging / RP Eagle |
| Eckard, Don | 1548224322 | Eagle Imaging / RP Eagle |
| Griggs, Thomas | 1891743373 | Eagle Imaging / RP Eagle |
| Jansen, Joshua | 1952539629 | Eagle Imaging / RP Eagle |
| Myers, Chuck | 1801850193 | Eagle Imaging / RP Eagle |
| Nelson, Brett | 1700096435 | Eagle Imaging / RP Eagle |
| Schucany, William G. | 1114970910 | Eagle Imaging / RP Eagle |
| Toppins, Anthony C. | 1427001395 | Eagle Imaging / RP Eagle |
| Whitley, Mark | 1700840055 | Eagle Imaging / RP Eagle |

79.     None of the physicians described in the previous paragraph were listed as Singleton providers in 2016.[12] Nor could they have been, given that none worked within 250 miles of Houston.

80.     In 2017, United began receiving claims under the terms of the Agreement for services performed by providers at Consultants in Radiology P.A., or CIRPA, a Radiology Partners' affiliate since 2015. CIRPA is based on the Dallas-Fort Worth metropolitan area and provides remote radiology services. One of the CIRPA providers who billed through the Agreement, Narayana Mamillapalli, M.D., has worked at CIRPA since

---

[10] https://www.radpartners.com/about-us/our-team/
[11] Each of the physicians listed in this paragraph were listed on Eagle Imaging's website at that time. *See* https://web.archive.org/web/20160216090333/http://eagleimagingok.com/team/
[12] https://web.archive.org/web/20160314212539/http://www.saparadiology.com/AdultServices/MeetOurPhysicians.aspx

COMPLAINT

2016.[13] Another, Jeffrey Leitko, M.D., has been with CIRPA since 2007.[14] Neither Dr. Mamillapalli nor Dr. Leitko were listed as Singleton providers in 2017.[15]

81.    Also in 2017, Radiology Partners billed claims through the Agreement for services by Mark Halsted, M.D., a "partner and member of [Radiology Partners'] remote reading team."[16] Dr. Halsted is based in Cincinnati, Ohio.

82.    In 2018, another Radiology Partners' physician was billed through the Agreement: Arnold Saha, M.D., who worked for Radiology Partners in El Paso, Texas from September 2018 to April 2021.[17] Also in 2018, claims for services by Nadia Shah, M.D. were billed as if performed by Singleton. Dr. Shah has worked at Radiology Associates of North Texas in Fort Worth since 2013,[18] and was not listed as a Singleton provider in 2018.[19]

83.    In 2019, Radiology Partners affiliated with a large radiology practice called Austin Radiological Associates ("ARA"), a group of 17 radiology clinics in and around Austin, Texas. Claims for ARA providers' services soon began to pour through the Agreement, including for: [20]

| Physician Name | Physician NPI | Employer in 2019[21] |
|---|---|---|
| Alam, Tariq | 1174642839 | ARA |
| Aronoff, Michael D. | 1457353625 | ARA |
| Ben-Avi, Hillel | 1841294790 | ARA |

[13] https://cirpa.com/portfolio-items/narayana-swamy-mamillapalli-md/

[14] https://cirpa.com/portfolio-items/jeffrey-k-leitko-md/

[15] https://web.archive.org/web/20171117000029/http://www.saparadiology.com:80/AdultServices/MeetOurPhysicians.aspx

[16] https://www.linkedin.com/in/mark-halsted-8367b86/

[17] https://www.linkedin.com/in/arnoldsahamd/

[18] https://www.linkedin.com/in/nadia-shah-a677aa67/

[19] https://web.archive.org/web/20180809110220/http://www.saparadiology.com:80/AdultServices/MeetOurPhysicians.aspx

[20] Each of the providers listed in this paragraph can be identified in an archived version of ARA's website from 2019. *See* https://web.archive.org/web/20191108155014/https://www.ausrad.com/our-doctors/.

[21] Each of the physicians listed in this paragraph were listed on ARA website at that time. *See* https://web.archive.org/web/20191108155014/https://www.ausrad.com/our-doctors/

COMPLAINT

| Contreras, Jaime | 1245290469 | ARA |
|---|---|---|
| Harper, Michael T. | 1023058310 | ARA |
| Jhaveri, Ravi | 1215931027 | ARA |
| Nguyen, Mike | 1699006304 | ARA |
| Price, Stephen B. | 1316262330 | ARA |
| Putnam, Russell | 1639173263 | ARA |
| Ranjithan, Murali | 1962678490 | ARA |
| Saravanan, Arthy[22] | 1134412653 | ARA |
| Shademan, Ashkan | 1871814616 | ARA |
| Sheneman, Jeffrey | 1275588360 | ARA |
| Trubek, Simon | 1366446890 | ARA |
| Winsett, Mary | 1518961044 | ARA |

84.    In 2020, Radiology Partners continued to bill new providers through the Agreement. Tong Maung, M.D., for example, a radiologist that works for RP Matrix out of San Diego,[23] and Jose L. Arjona, M.D., a Radiology Partners physician based in the Dallas-Fort Worth area, both had claims for their services submitted under the Agreement.[24] On information and belief, neither Dr. Maung or Dr. Arjona were listed as providers at Singleton.

85.    From 2021 into 2022, Radiology Partners used the Agreement to bill for additions to its roster from its largest acquisition to date. Radiology Partners paid $885 million to acquire MEDNAX Radiology Solutions ("MEDNAX").[25] United has identified two notable radiology practice groups that were once owned by Mednax and were subsequently billed through the Agreement post-acquisition: Synergy Radiology Associates ("Synergy") and Virtual Radiologic (or "vRad").

86.    Synergy is a Houston-based radiology practice that was acquired by MEDNAX in 2017.[26] Thus, Synergy became a part of Radiology

---

[22] Dr. Saravanan is the current Associate Chief Medical Officer for Recruitment at Radiology Partners. *See* https://www.radpartners.com/about-us/our-team/
[23] https://www.radpartners.com/rp-matrix-radiologists/
[24] https://www.linkedin.com/in/jose-l-arjona-md-236bb029/
[25] https://www.radpartners.com/2020/12/radiology-partners-completes-acquisition-of-mednax-radiology-solutions/
[26] https://synergyrad.org/mednax-announces-acquisition-of-leading-texas-radiology-practice-2/

COMPLAINT

Partners through the acquisition of MEDNAX. In 2021 and 2022, claims for at least five Synergy physicians were billed through the Agreement:

| Physician Name | Physician NPI | Employer 2021-22[27] |
|---|---|---|
| Bacchav, Vrushali | 1093030470 | Synergy Radiology |
| Moore, Alaina | 1952651325 | Synergy Radiology |
| Rivera, Javier | 1093030470 | Synergy Radiology |
| Solomon, Eric | 1164431565 | Synergy Radiology |
| Telesmanich, Elizabeth | 1912267626 | Synergy Radiology |

87.    None of these physicians work at Singleton. To illustrate, both Drs. Moore[28] and Telesmanich[29] have worked at Synergy since at least 2018.[30]

88.    vRad exclusively provides remote teleradiology services. It was acquired by MEDNAX in 2015,[31] and thus became part of Radiology Partners in late 2020. Following Radiology Partners' acquisition, claims for services performed by vRad radiologists began to flow through the Agreement. United was able to identify these radiologists' employer based on the address associated with their respective National Provider Identifiers. vRad is located at 11995 Singletree Lane, Suite 500, Eden Prairie, MN, and that address is registered to each provider's NPI. For example:

| Physician Name | Physician NPI | Date Practice Address Last Updated in NPPES[32] |
|---|---|---|
| Gleason, Thomas R. | 1811079437 | January 9, 2020 |
| Malik, Daewood | 1336451673 | June 25, 2021 |
| Ngo, Lawrence | 1457738072 | July 21, 2020 |
| Rex, David L. | 1386608172 | June 25, 2021 |
| Tague, David F. | 1841219508 | June 25, 2021 |

[27] https://synergyrad.org/about-us/our-radiologists/
[28] https://www.linkedin.com/in/alaina-moore-a981a2125/
[29] https://www.linkedin.com/in/morgan-telesmanich-807b7510/
[30] See, e.g., https://web.archive.org/web/20220521022948/https://baylorradiologists.com/our-physicians/
[31] https://www.vrad.com/wp-content/uploads/2021/12/vRadToBeAcquiredByMEDNAX_vRad_Press_Release_05_12_15.pdf
[32] Physicians in the United States register with the Centers for Medicare and Medicaid Services and receive a unique National Provider Identifier in return. These are maintained in the National Plan and Provider Enumeration System, searchable at https://npiregistry.cms.hhs.gov/search.

COMPLAINT

ROBINS KAPLAN LLP

89.    None of these providers mentioned above are listed as providers at Singleton.

90.    Radiology Partners and Singleton each played different roles in their scheme to defraud United out of tens of millions of dollars. Singleton maintained the Agreement with United. Radiology Partners acquired medical groups all over Texas and across the United States and then conspired with Singleton to improperly cause United to link those providers to Singleton's TIN in United's contract and claims processing systems so that Radiology Partners could bill services performed by Unauthorized Providers through the Agreement.

91.    Neither Radiology Partners nor Singleton could have effectuated their pass-through billing scheme without the other. Radiology Partners needed access to Singleton's Agreement with United. And Singleton needed Radiology Partners to acquire practices to become affiliated with Unauthorized Providers who were then linked to Singleton's TIN to accomplish the pass-through billing of claims for services performed by the Unauthorized Providers.

92.    On information and belief, Radiology Partners' pass-through billing of claims through the Agreement with United is just one example of Radiology Partners' use of United contracts to pass-through bill.

93.    On information and belief, Radiology Partners also caused Singleton and its other affiliates to bill claims in a manner that is fraudulent and inconsistent with industry standard billing practices through, for example, upcoding and miscoding claims.

94.    Radiology Partners' pass-through billing scheme caused United tens of millions of dollars in damages.

95.    United wrongfully paid these fraudulent claims for reimbursement to Singleton and other Radiology Partners affiliated medical

COMPLAINT

groups and, upon information and belief, those monies received then flowed upwards into Radiology Partners' coffers.

**COUNT ONE**

**(TORTIOUS INTERFERENCE WITH CONTRACT)**

107.   United incorporates by reference as fully set forth herein the allegations in the preceding paragraphs.

108.   The Agreement was a valid and enforceable contract between United and Singleton.

109.   Radiology Partners was aware of the Agreement between United and Singleton and its provisions, including:

a.   Radiology Partners knew that pursuant to Section 1 of the Agreement, the only providers defined as "Medical Group Physicians" were individuals who "practice as a shareholder, partner or employee of [Singleton] and who [have] executed a Medical Group Physician Participation Addendum."

b.   Radiology Partners knew that the Agreement only provided for reimbursement of services rendered by Singleton and Singleton Medical Group Physicians.

c.   Radiology Partners knew that the Agreement prohibited Singleton from assigning any of its rights and responsibilities under the Agreement without written consent of United.

d.   Radiology Partners knew that Singleton was required to promptly notify United of any change in its name, ownership, or Federal Tax I.D. number (TIN).

e.   Radiology Partners knew that the Agreement prohibited Singleton from disclosing to "third parties any confidential or proprietary business information which it receives from the other

ROBINS KAPLAN LLP

party, including, but not limited to . . . specific rates. . . ."

110.  Radiology Partners improperly, wrongfully, willfully, and intentionally engaged in the scheme described in this Complaint. Radiology Partners' scheme was predicated upon the repeated breach of the Agreement.

111.  By orchestrating and participating in the fraudulent scheme described herein, Radiology Partners caused Singleton to breach the Agreement with United, including the above provisions.

112.  For instance, Radiology Partners caused Singleton to breach the Agreement by billing United for services performed by Unauthorized Providers using the Singleton TIN.

113.  Likewise, Radiology Partners caused Singleton to breach the Agreement by failing to provide United with notice of its change in ownership or control after Radiology Partners installed its executive as the sole member, officer, and director.

114.  Radiology Partners also requested that United link Unauthorized Providers to Singleton's TIN so that it could bill United for those services under the Agreement. In those requests, Radiology Partners represented to United that those providers were shareholders, partners, or employees of Singleton, when in fact most of them were not.

115.  Radiology Partners also caused Singleton to breach the Agreement by making Singleton disclose confidential information, including the reimbursement rates provided under the Agreement, to Radiology Partners and its affiliates.

116.  Radiology Partners' interference with the Agreement between Singleton and United was intentional, tortious, and without justification.

117.  United has been damaged by Radiology Partners' acts of interference in an amount to be determined at trial.

COMPLAINT

**COUNT TWO**

**(FRAUD)**

118.  United incorporates by reference as fully set forth herein the allegations in the preceding paragraphs.

119. Radiology Partners knowingly made material misrepresentations and omissions to United when requesting that Unauthorized Providers be linked to the Singleton TIN and on claims that Singleton and/or Radiology Partners submitted, or caused to be submitted, with the intent to induce United to rely on those misrepresentations and omissions to pay reimbursements on claims for services performed by Unauthorized Providers.

120.  Each time that Radiology Partners made a request to United to link an Unauthorized Provider to Singleton's TIN, so that it could bill United for services performed by that provider, Radiology Partners represented to United that the provider was a Singleton provider, providing services on behalf of Singleton patients.

121.  United relied on Radiology Partners' representations when linking the Unauthorized Providers to the Singleton TIN, which allowed it to bill (and receive reimbursements) services performed by the Unauthorized Providers.

122.  Further, the submission of a claim to United constitutes a certification and representation that the information shown on the claim is true, accurate and complete, and that the submitted claims did not knowingly or recklessly disregard or misrepresent or conceal material facts.

123.  Each time Radiology Partners submitted a claim, or caused a claim to be submitted by Singleton, it represented that the provider who performed the service was entitled to bill under the Agreement for those services.

124.  Likewise, each time Radiology Partners submitted a claim, or caused a claim to be submitted by Singleton, it represented that it had performed the services being billed and thus was entitled to reimbursements for those services.

125.  Yet many of the providers billing under the Agreement were not authorized to bill under the Agreement. They were not Singleton providers as defined under the Agreement, and they were not providing services to Singleton patients, as required under the Agreement.

126.  The fact that the providers linked to Singleton's TIN and whose services Singleton and Radiology Partners were billing for were Unauthorized Providers, and that Radiology Partners had planned the scheme in concert with Singleton, was information material to United's determination of whether claims billed by those providers were payable.

127.  Radiology Partners made the aforementioned misrepresentations and omissions with the intent to wrongfully induce United to make payment on the claims under the Agreement.

128.  United reasonably relied on the aforementioned misrepresentations and omissions by Radiology Partners and paid the claims submitted for services performed by Unauthorized Providers.

129.  Because United processes over one million claims per day, the vast majority are automatically adjudicated by United's claim-processing systems. Due to the volume of claims that United processes, United cannot review the medical records underlying each and every claim for accuracy before making the decision to pay a claim—doing so would grind the healthcare system to a halt. Instead, United relied on Radiology Partners' representation that the information submitted in the claims was true, accurate and complete, and that Radiology Partners did not knowingly or recklessly disregard or misrepresent or conceal material facts.

COMPLAINT

130. As a direct and proximate result of Radiology Partners' misrepresentations and omissions, United has been damaged in an amount to be determined at trial.

## COUNT THREE
## (FRAUDULENT INDUCEMENT)

131. United incorporates by reference as fully set forth herein the allegations in the preceding and succeeding paragraphs.

132. Radiology Partners knowingly made the aforementioned misrepresentations and omissions to United when asking United to link Unauthorized Providers to Singleton's TIN and on claims that it submitted, or caused Singleton to submit, with the intent to induce United to rely on those misrepresentations and omissions to pay the claims, which it would not have otherwise done without Radiology Partners' misrepresentations.

133. United was injured by the payments that it was induced to make as a result of Radiology Partners' material misrepresentations.

134. As a direct and proximate result of Radiology Partners' misrepresentations and omissions, United has been damaged in an amount to be determined at trial.

## COUNT FOUR
## (NEGLIGENT MISREPRESENTATION)

135. United incorporates by reference as fully set forth herein the allegations in the preceding paragraphs.

136. Radiology Partners knowingly made the aforementioned material misrepresentations and omissions to United, made them without regard to their truth or falsity, made them under circumstances in which Radiology Partners ought to have known their falsity, or made them negligently and without the exercise of reasonable care or competence.

137. Radiology Partners intended and expected that United would

ROBINS KAPLAN LLP

COMPLAINT

rely on its misrepresentations and omissions.

138.   United    justifiably    relied    on    the    aforementioned misrepresentations and omissions made by Radiology Partners, and paid the claims improperly billed by Singleton.

139.   Radiology Partners had superior and special knowledge of its practice of submitting and causing Singleton to submit claims from Unauthorized Providers.

140.   Radiology Partners had a duty to disclose to United information material to the claims that it submitted or caused Singleton to submit for reimbursement.

141.   Radiology Partners understood that it had a special relationship of trust and confidence toward United that gave rise to a duty to speak and disclose material information regarding the claims being submitted.

142.   As a direct and proximate result of Radiology Partners' misrepresentations and omissions, United has been damaged in an amount to be determined at trial.

### COUNT FIVE
### (MONEY HAD AND RECEIVED)

143.   United incorporates by reference as fully set forth herein the allegations in the preceding paragraphs.

144.   In addition, or in the alternative, Radiology Partners is liable under money had and received.

145.   United has paid claims to Singleton and those funds were then funneled to Radiology Partners.

146.   United would not have paid those claims but for the wrongful conduct of Radiology Partners, as described herein.

147.   Singleton and Radiology Partners entered into a conspiracy to

COMPLAINT

bill unauthorized providers under the Agreement.

148. Without revealing to United the truth, Radiology Partners gouged United, its plan sponsors, and their member employees.

149. The excessive amounts paid by United should be returned to United in good conscience. Accordingly, United seeks the return of money had and received to compensate United, its plan sponsors, and their member employees.

**COUNT SIX**

**(UNJUST ENRICHMENT)**

150. United incorporates by reference as fully set forth herein the allegations in the preceding paragraphs.

151. In addition, or in the alternative, Radiology Partners is liable under the principle of unjust enrichment. United may recover based on unjust enrichment because Radiology Partners has used fraud to obtain a benefit to which it is not entitled.

152. Radiology Partners submitted and/or caused Singleton to submit claims to United that it would not have paid but for the wrongful conduct of Radiology Partners as described herein.

153. When United paid Singleton for services it was not obligated to cover, Radiology Partners received a benefit from United through its fraudulent billing practices. Specifically, Radiology Partners collected the sums wrongfully paid to Singleton by United as a result of this fraudulent scheme.

154. As a result, Radiology Partners has been unjustly enriched and United, its plan sponsors, and their member employees have been injured.

155. It would be inequitable for Radiology Partners to retain amounts United paid as a result of Radiology Partners' wrongful conduct alleged herein.

COMPLAINT

156. Accordingly, United seeks the return of that money to compensate United, its plan sponsors, and their member employees.

COUNT SEVEN

(VIOLATION OF CIVIL RICO, 18 U.S.C. § 1962(c))

157. United incorporates by reference as fully set forth herein the allegations in the preceding paragraphs.

158. Singleton and Radiology Partners are "persons" within the meaning of 18 U.S.C. § 1961(3) that conducted the affairs of an enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

159. Singleton and Radiology Partners entered into an association-in-fact enterprise (the "Enterprise") within the meaning of 18 U.S.C. § 1961(4). The Enterprise was an ongoing organization that functioned as a continuing unit. The Enterprise was created and/or used as a tool to effectuate a pattern of racketeering activity, and the Enterprise had the common purpose of doing the same. Singleton and Radiology Partners are each "persons" distinct from the Enterprise.

160. Radiology Partners and Singleton established the Enterprise in order to reap windfall profits from the United through a pattern of fraudulent pass-through billing. The Enterprise worked to deceive United into overpaying for radiology services by means of fraud perpetrated over the wires or by mail.

161. Each participant in the Enterprise played a distinct and indispensable role, and the participants joined as a group to execute the scheme and further the Enterprise's goals. Radiology Partners acquired medical groups across Texas and the country so that it had control over how the claims for services performed by providers affiliated with those medical groups could be billed. Singleton maintained the Agreement with United and made requests to United to link the Unauthorized Providers to

Singleton's TIN so that Singleton, at the direction of Radiology Partners, could bill and receive reimbursements for services performed by Unauthorized Providers under the terms of the Agreement. Singleton then billed United for services performed by the Unauthorized Providers and received reimbursements at rates United would not have paid had it know that the providers performing the services being billed were not Singleton providers and were not providing services to Singleton patients.

162.  The Enterprise could not have succeeded, and its members could not have enjoyed the substantial financial benefits described above, absent their coordinated efforts. The members of the Enterprise functioned as a unit in pursuit of their common purpose.

163.  The relationships between the members of the Enterprise extended beyond the unlawful predicate acts at issue in this case. In particular, Radiology Partners provided other legitimate services to Singleton as part of its relationship including clinical support, leadership education and development, IT infrastructure, data & analytics, and recruitment, credentialing and  human resources support. The illegal scheme at issue in this litigation was and is distinct from any legitimate business activities undertaken by the members of the Enterprise.

164.  Each participant in the Enterprise knew their scheme violated federal and state laws and breached the Agreement and acted with the specific intent to defraud the United.

165.  The Enterprise engaged in and affected interstate commerce because, among other things, it fraudulently billed United for services performed by providers outside the state of Texas and because Radiology Partners is a California-based company.

166.  Radiology Partners and Singleton conducted and participated in the affairs of the Enterprise through a pattern of racketeering activity that

COMPLAINT

ROBINS KAPLAN LLP

includes acts indictable under 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), and 1952 (use of interstate facilities to conduct unlawful activity).

167. Predicate acts of racketeering that Radiology Partners and Singleton engaged in include, but are not limited to:

    a. The use of wires and mails to submit fraudulent claims to the United;

    b. The use of wires and mails to request that United link Unauthorized Providers to the Singleton TIN; and

    c. The use of the wires and mails to obtain payments from the United, and to distribute the proceeds of the scheme amongst its members.

168. The above-described acts reveal a sustained pattern of racketeering activity, in addition to the threat of continued racketeering activity.

    a. As discussed above, the racketeering activity commenced in 2015 (at the latest) and continued for years thereafter to the present. During this period, the Enterprise operated continuously, requesting that United link Unauthorized Providers to the Singleton TIN numerous times during the course of the scheme described above.

    b. Further, the Enterprise submitted claims for services performed by Unauthorized Providers under the Singleton TIN on nearly a daily basis since the Enterprise was formed in 2015.

    c. The pattern and policy of linking Unauthorized Providers to the Singleton TIN and then billing United for services performed by the Unauthorized Providers under the terms of the Agreement has become the regular manner in which

1    Radiology Partners and Singleton conduct their business.

2    169.   The purpose and effect of the Enterprise's racketeering activity

3    was to defraud United out of substantial sums of money by deceiving them

4    into significantly overpaying Singleton on claims for which Singleton was

5    not entitled to reimbursement. The Enterprise caused this result by

6    systematically submitting claims that deliberately misrepresented that the

7    Unauthorized Providers were Singleton providers performing services on

8    behalf of Singleton's patients.

9    170.   United suffered injuries when it overpaid on fraudulent claims,

10   losing many millions of dollars as a result of the Enterprise's racketeering

11   activity.

12   171.   United's injuries were directly and proximately caused by the

13   racketeering activities as described above.

14   172.   By virtue of these violations of 18 U.S.C. § 1962(c), Singleton and

15   Radiology Partners are jointly and severally liable to United for three times

16   the damages United sustained in an amount to be determined at trial, plus

17   the cost of this suit, including reasonable attorneys' fees.

18                              **COUNT EIGHT**

19   **(CONSPIRACY TO VIOLATE CIVIL RICO, 18 U.S.C. § 1962(d))**

20   173.   United incorporates by reference as fully set forth herein the

21   allegations in the preceding paragraphs.

22   174.   18 U.S.C. § 1962(d) provides that it "shall be unlawful for any

23   person to conspire to violate any of the provisions of subsection (a), (b) or

24   (c) of this section."

25   175. Radiology Partners and Singleton have violated 18 U.S.C.

26   § 1962(d) by conspiring with each other to violate 18 U.S.C. § 1962(c). The

27   object of this conspiracy has been and is to conduct or participate in,

28   directly or indirectly, the conduct of the affairs of the Enterprise described

ROBINS KAPLAN LLP

herein through a pattern of racketeering activity.

176.   Radiology Partners and Singleton engaged in numerous overt and predicate fraudulent racketeering acts in furtherance of the conspiracy.

177.   The nature of the above acts, material misrepresentations, and omissions in furtherance of the conspiracy gives rise to an inference that they not only agreed to the objective of an 18 U.S.C. § 1962(d) violation of RICO by conspiring to violate 18 U.S.C. § 1962(c), but also that they were aware that their ongoing acts have been and are part of an overall pattern of racketeering activity.

178.   As a direct and proximate result of Radiology Partners and Singleton's overt acts and predicate acts in furtherance of violating 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c), United has been injured in its business and property as set forth more fully above.

179.   The purpose and effect of the conspiracy was to defraud the United out of substantial sums of money by deceiving them into significantly overpaying Singleton on claims for which Singleton was not entitled to reimbursement. The Enterprise caused this result by systematically submitting claims that deliberately misrepresented that the Unauthorized Providers were Singleton providers performing services on behalf of Singleton's patients.

180.   United suffered injuries when it overpaid on fraudulent claims, losing many millions of dollars as a result of the Enterprise's racketeering activity.

181.   By virtue of these violations of 18 U.S.C. § 1962(d), Radiology Partners and Singleton are jointly and severally liable to United for three times the damages United sustained in an amount to be determined at trial, plus the cost of this suit, including reasonable attorneys' fees.

**COUNT NINE**

ROBINS KAPLAN LLP

1   **(UNFAIR COMPETITION, Cal. Bus. & Prof. Code §§ 17200,** *et seq.***)**

2   182.   United incorporates by reference as fully set forth herein the

3   allegations in the preceding paragraphs.

4   183.   Radiology Partners has intentionally used deceit, trickery, and

5   unfair methods to interfere with a central structure of United's business,

6   damage United, and enrich itself.

7   184.   Radiology Partners secretly, deceptively, and unfairly used

8   Singleton as a conduit to wrongfully collect tens of millions of dollars in

9   reimbursements from United.

10   185.   As described herein, Radiology Partners took specific steps and

11   measures to conceal from United that it was adding Unauthorized

12   Providers to Singleton's TIN and causing Singleton to submit claims for

13   services by Unauthorized Providers under the Agreement.

14   186.   Radiology Partners engaged in this deceptive conduct to extract

15   more favorable reimbursement rates for its providers in other medical

16   groups aside Singleton across Texas and elsewhere.

17   187.   California's Unfair Competition Law, Cal. Bus. & Prof. Code

18   § 17200, *et seq.* (UCL), prohibits such unlawful, unfair, and fraudulent

19   business practices.

20   188.   Radiology Partners engaged in unlawful practices described

21   above, including, but not limited to:

22           a. Radiology Partners orchestrated a fraudulent scheme with

23              Singleton to breach the Agreement with United.

24           b. Radiology Partners caused Singleton to fraudulently bill

25              United for services performed by Unauthorized Providers

26              using the Singleton TIN.

27           c. Radiology Partners prevented United from being provided

28              contractually required notice of change in ownership or

COMPLAINT

1                control with Singleton.

2           d.  Purporting to act on Singleton's behalf, Radiology Partners

3                requested that United link Unauthorized Providers to

4                Singleton's TIN so that it could bill for United for those

5                Unauthorized Providers' services under the Agreement. In

6                those requests, Radiology Partners represented to United that

7                those providers were shareholders, partners, or employees of

8                Singleton, when in fact most of them were not.

9           f.  Radiology Partners also forced Singleton disclose United's

10              confidential and sensitive business information, including

11              the reimbursement rates provided under the Agreement, to

12              itself.

13     200. Radiology Partners' conduct has directly and proximately

14 caused significant damages to United in the form of payments United made

15 to Singleton, subsequent to and because of the foregoing breaches, which

16 were not due and would not otherwise have been made had United known

17 of Radiology Partners' and Singleton's concealed scheme.

18     201. By virtue of the foregoing, United is entitled to restitution of the

19 amounts by which Singleton has been unjustly enriched, as well as an

20 injunction prohibiting Radiology Partners from continuing to engage in the

21 tortious conduct described above, and any other relief deemed just and

22 proper.

23                            **COUNT TEN**

24              **(ERISA, 29 U.S.C. § 1132(a)(3))**

25     202. United incorporates by reference as fully set forth herein the

26 allegations in the preceding paragraphs.

27     203. United acts as a claims administrator for certain health benefit

28 plans governed by ERISA, 29 U.S.C. § 1001, *et seq*. (the "ERISA Plans"). In

ROBINS KAPLAN LLP

COMPLAINT

1  performing their duties as claims administrator, the United Plaintiffs act as
2  ERISA fiduciaries for these plans as that term is defined in ERISA section
3  3(21).

4      204.  ERISA Section 502(a)(3) permits fiduciaries to enjoin any acts or
5  practices that violate any provisions of the ERISA Plans, and to obtain other
6  appropriate relief to redress such violations or enforce provisions of the
7  ERISA Plans.

8      205.  Radiology Partners has engaged in the above-described scheme
9  to defraud United into paying sums in excess of what was owed under the
10 relevant ERISA plans by systematically and fraudulently submitting claims
11 under the Agreement for services performed by Unauthorized Providers
12 and for services performed on behalf of individuals who were not
13 Singleton's patients.

14     206.  Although the specific terms of the impacted ERISA Plans vary,
15 the following example is reasonably representative and relevant to the
16 conduct of Radiology Partners, as alleged herein:

> **Right to Recovery of Overpayments**. If the Claims
> Administrator determines that you or the provider have
> been overpaid, the Plan has the right to receive a refund
> from you or the provider of the difference between the
> amount paid and the amount that should have been paid.
> If you, or any other person or organization that was
> overpaid, do not promptly refund the full amount, the
> Plan may reduce the amount of future benefits up to the
> refund that is due. **The Plan may have additional other**
> **rights, such as suing to recover overpayments**, in
> addition to the right to reduce future benefits to receive

COMPLAINT

ROBINS KAPLAN LLP

the refund.

207.  United seeks equitable relief in the form of restitution, equitable liens, and a constructive trust on the amounts overpaid as a result of Radiology Partners' conduct and scheme.

208.  Upon information and belief, the funds that Radiology Partners caused United to overpay remain in the possession or control of Radiology Partners, and are separately identifiable—even if commingled with other funds—through tracing methods including the "lowest intermediate balance" doctrine.

209.  The funds that United seeks in restitution from Radiology Partners are "specific funds." For example, the Unauthorized Providers were wrongfully paid by United on a per-claim basis, and United seeks to recover the ill-gotten funds for those claims. Upon information and belief, records maintained by Radiology Partners will identify the specific funds sought by United.

210.  The funds paid by United as a result of Radiology Partners' conduct and scheme, should, in equity and good conscience, be returned to United.

211.  United also seeks recovery of reasonable and necessary attorney's fees and costs pursuant to ERISA Section 502(g)(1).

## TOLLING

212.  To the extent any limitations periods might apply to the claims above or that United may otherwise have against Radiology Partners, those limitations periods have not run because Radiology Partners has engaged in continuing, repetitive, tortious conduct, causing additional and ongoing injury to United. Because Radiology Partner's repetitive tortious conduct has not ceased, no limitations periods on United's claims have started to run.

COMPLAINT

213.   Moreover, even if one or more limitations periods could apply, those limitations periods were tolled during the period before United uncovered Radiology Partner's systematic scheme. Radiology Partners concealed the central components of its scheme making it difficult to discover. Indeed, the very structure of Radiology Partner's control over Singleton is designed to be obscure. Radiology Partners' employees and agents also actively misrepresented Radiology Partners' affiliation with Singleton to United, making it difficult or impossible for United to ascertain.

214.   Radiology Partners also knowingly made representations to United when requesting that Unauthorized Providers be linked to the Singleton TIN and on claims that Radiology Partners submitted or caused Singleton to submit to United. United justifiably relied on those representations and only recently learned that these representations were premised on materially false and/or misleading representations and omissions.

## **PRAYER FOR RELIEF**

WHEREFORE, United respectfully requests a judgment in its favor granting the following relief:

a.  An award of compensatory damages as requested herein;

b.  Equitable relief as requested herein;

c.  Declaratory relief as requested herein;

d.  Injunctive relief as requested herein;

e.  Treble damages as permitted under RICO and any other applicable state statutes;

f.  Costs;

g.  Reasonable attorney fees;

h.  Prejudgment and post-judgment interest; and

COMPLAINT

ROBINS KAPLAN LLP

i.  An award of any other relief in law or equity that the Court deems just and proper.

DATED: April 14, 2023       **ROBINS KAPLAN LLP**

By:    */s/Roman M. Silberfeld*
       Roman M. Silberfeld (CA Bar No. 62783)
       rsilberfeld@robinskaplan.com
       Tommy H. Du (CA Bar No. 305117)
       tdu@robinskaplan.com
       2121 Avenue of the Stars, Suite 2800
       Los Angeles, California 90067

       Jamie R. Kurtz (*pro hac vice* to be filed)
       jkurtz@robinskaplan.com
       Marcus A. Guith (*pro hac vice* to be filed)
       mguith@robinskaplan.com
       Kyle D. Nelson (*pro hac vice* to be filed)
       knelson@robinskaplan.com
       Alexa R. Ely (*pro hac vice* to be filed)
       aely@robinskaplan.com
       800 LaSalle Ave., Suite 2800
       Minneapolis, MN 55424

       Paul D. Weller (*pro hac vice* to be filed)
       pweller@robinskaplan.com
       1325 Avenue of the Americas, Suite 2601
       New York, New York 10019

       *Attorneys for UnitedHealthcare of Texas,*
       *Inc.  and United Healthcare Services, Inc.*

1    **DEMAND FOR JURY TRIAL**

2        Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs

3    demand a jury trial as to all matters so triable.

4

5    DATED: April 14, 2023        **ROBINS KAPLAN LLP**

6
                                  By: _____
7                                       */s/ Roman M. Silberfeld*

8                                  *Attorney for UnitedHealthcare of Texas,*
                                   *Inc. and United Healthcare Services, Inc.*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT